No. 03-014

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 201N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOAN MARIE BURDEAU,

Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District, Cause No. CDC-02-067
In and for the County of Cascade,
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Meghan Lulf, Deputy Public Defender, Great Falls, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

Brant Light, Cascade County Attorney; Marvin Anderson,
Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  March 13, 2003

Decided:   August 12, 2003

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2      Joan Marie Burdeau (Burdeau) appeals from the judgment and sentence entered by the Eighth Judicial District Court, Cascade County, on a jury verdict finding her guilty of felony deceptive practices (common scheme).  We affirm.

¶3      The issue on appeal is whether the District Court erred in denying Burdeau's motion for a directed verdict.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      On January 29, 2002, Tina Winkler (Winkler) discovered that her credit card was missing.  Her husband called the credit card company, which informed him that someone had used the card at the Lady Footlocker store in Great Falls, Montana.  Winkler called the Great Falls Police Department.  The State of Montana (State) ultimately charged Burdeau and Kamel Wiley (Wiley) with deceptive practices (common scheme), a felony, and the District Court scheduled a jury trial.

¶5      Christina Carter (Carter), an employee at Lady Footlocker in the Holiday Village Mall in Great Falls, testified that on January 29, 2002, two women, "[a] heavier set African American and a heavier set Native American," entered the store shortly before 5:00 p.m.

2

Carter identified the women at trial as Wiley and Burdeau, respectively. Carter recognized Wiley because Wiley previously had placed a special order. After shopping "pretty quick[ly]," Burdeau and Wiley brought two pair of shoes to the counter and Wiley presented a credit card bearing the name Tina Winkler. Wiley signed the credit card sales slip with Winkler's name. As the two women left the store, Carter became suspicious and looked up the paperwork from the special order she had placed for Wiley. The paperwork indicated the woman's name was Kamel Wiley, not Tina Winkler. Carter watched the two women as they went to Footlocker, another store in the mall. Carter telephoned the employees at Footlocker and warned them not to accept a credit card from the two women. She then called 911.

¶6     Jason Lising (Lising), an employee at Footlocker, testified he saw Wiley and Burdeau enter his store around 5:00 p.m. While Burdeau and Wiley were in Footlocker, another employee received the call from Carter warning about the stolen credit card. The other employee told Lising he and Lising should attempt to stall the two women as they might have a stolen credit card. Lising and the other employee attempted to delay until Wiley complained that she and Burdeau weren't being helped. Lising testified that, after "hurriedly going through the store picking out things," Burdeau and Wiley brought five or six items to the counter and Burdeau presented the credit card bearing the name Tina Winkler. Lising asked for identification, which Burdeau said she did not have. Lising told the women he could not process the transaction, and they left the store.

¶7     Vernon Lindstrom (Lindstrom), the manager of the Herberger's store in the mall, testified that at about 5:00 p.m. he noticed a Native American woman in the lingerie

3

department of his store. A police officer investigating the use of the stolen credit card asked Lindstrom if he had seen a Native American woman in the store. Lindstrom told the officer he had, and the officer asked Lindstrom to look around for the credit card. Lindstrom found Winkler's credit card under some merchandise in the lingerie department.

¶8      At the conclusion of the State's case, Burdeau and Wiley moved for a directed verdict. The District Court denied the motion, and the jury ultimately found both defendants guilty. The court sentenced them and entered judgment. Burdeau appeals.

## STANDARD OF REVIEW

¶9      In a criminal case, we review a district court's decision denying a motion for a directed verdict to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Landis*, 2002 MT 45, ¶ 23, 308 Mont. 354, ¶ 23, 43 P.3d 298, ¶ 23. We will not reverse the trial court's decision absent an abuse of discretion. *Landis*, ¶ 23.

## DISCUSSION

¶10     Did the District Court abuse its discretion by denying Burdeau's motion for a directed verdict?

¶11     Purposely or knowingly "using a credit card that was issued to another without the other's consent" to obtain or attempt to obtain property constitutes the misdemeanor offense of deceptive practices. The offense is a felony "[i]f the deceptive practices are part of a common scheme." Section 45-6-317(1)(d)(i), (2), MCA. Section 45-2-101(7), MCA, defines "common scheme" as

4

a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan that results in the repeated commission of the same offense or that affects the same person or the same persons or the property of the same person or persons.

The "common scheme" element requires proof of a series of acts which must be "either individually incomplete such that they show that a single crime ha[s] been committed, or *be acts which closely follow one another evidencing a continuing criminal design.*" *State v. Fleming* (1987), 225 Mont. 48, 51, 730 P.2d 1178, 1180 (citation omitted)(emphasis added).

¶12     Burdeau concedes that the State established that she committed the misdemeanor offense of deceptive practices by presenting Winkler's credit card at Footlocker. She asserts, however, that one instance cannot constitute a common scheme. She argues Wiley presented the card at Lady Footlocker and proof of Wiley's actions is insufficient to support Burdeau's conviction for the felony offense of deceptive practices (common scheme). Thus, the only question before us is whether the State presented evidence upon which a rational jury could have found acts by Burdeau constituting a common scheme.

¶13     The evidence in the present case is that Burdeau and Wiley had unauthorized possession of Winkler's credit card by sometime in the afternoon of January 29, 2002. Over a short period of time, they shopped together in at least two stores in the mall. On each occasion, they brought merchandise to the counter for purchase, taking turns presenting Winkler's credit card while standing together. Lindstrom's testimony that, at approximately the same time, he saw a Native American woman in the lingerie department of Herberger's, and then found Winkler's credit card in that department, adds circumstantial evidence that Burdeau also was in Herberger's and disposed of Winkler's credit card there.

5

¶14 Viewing the evidence most favorably to the State, we conclude a rational jury could have found Burdeau guilty of deceptive practices (common scheme) beyond a reasonable doubt. The State established that Burdeau engaged in a series of acts affecting Winkler's property and motivated by a common purpose or plan to use Winkler's credit card to obtain as much merchandise as possible. *See* § 45-2-101(7), MCA. The evidence also demonstrated a series of acts by Burdeau which closely followed each other, evidencing a continuing criminal design. *See Fleming*, 225 Mont. at 51, 730 P.2d at 1180. For these reasons, we hold the District Court did not abuse its discretion in denying Burdeau's motion for a directed verdict.

¶15 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶16    I dissent. Burdeau was convicted of deceptive practices, common scheme, a felony. Section 45-6-317(1)(d)(i), MCA. "Common scheme" requires that the defendant engage in a "series of acts or omissions." Section 45-2-101(7), MCA. Defendant Burdeau only attempted to use the credit card once. The Court has adopted the State's theory that, although she only presented the card one time, she was present with Wiley when Wiley used the same card to purchase goods. Burdeau, however, was not charged with accountability for Wiley's actions. In the absence of an accountability charge, the State's case against Burdeau must focus on Burdeau's conduct, not Wiley's. Burdeau's one time attempted use of the card does not satisfy the "series of acts or omissions" requirement of a common scheme. Her single act, at most, constitutes a misdemeanor deceptive practice. I would reverse the felony conviction.

/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter joins in the dissent of Justice Leaphart.

/S/ PATRICIA COTTER

7