No. 01-722

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 200

STATE OF MONTANA,

>Plaintiff and Respondent,

>v.

GILBERT RUSSETTE,

>Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

>For Appellant:

>Jeremy S. Yellin, Fort Benton, Montana

>For Respondent:

>Mike McGrath, Montana Attorney General, Cregg W. Coughlin, Assistant Montana Attorney General, Helena, Montana; David G. Rice, Hill County Attorney, Havre, Montana

Submitted on Briefs: April 18, 2002

Decided: September 5, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant Gilbert Russette was charged by complaint with operation of a vehicle with an alcohol concentration of .10 or more, a misdemeanor, in the Twelfth Judicial District Court, Hill County. Russette sought to introduce expert testimony at trial challenging the validity of a blood alcohol analysis performed by an Intoxilizer 5000. The District Court did not allow Russette's expert to testify and a jury subsequently convicted Russette of the offense. Russette appeals from the District Court's judgment, in part, on the grounds that it excluded the pertinent testimony in violation of the Montana Rules of Evidence. We affirm.

¶2 On appeal, Russette presents three issues for review. However, for the reasons discussed below, we will address only the question of whether the District Court abused its discretion when it refused to allow Russette's expert to testify at trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 At approximately 1:00 a.m. on September 10, 2000, Highway Patrol Officer Roger Hinckley observed a speeding vehicle, driven by Russette, and initiated a traffic stop. During the course of the stop, Officer Hinckley detected an odor of alcohol emanating from Russette's person. Russette admitted to consuming three beers within the preceding hour. Thus, Officer Hinckley proceeded to administer standardized field sobriety tests, i.e., the walk-and-turn test, the horizontal gaze nystagmus test, the one-leg-stand test, and the portable breath test. Based on the results of these

tests, Officer Hinckley placed Russette under arrest for driving under the influence of alcohol, a misdemeanor, in violation of § 61-8-401, MCA, and transported Russette to the Hill County Detention Center. At the Detention Center, Russette again performed the field sobriety tests and provided one breath sample for analysis by an Intoxilizer 5000. The Intoxilizer 5000 reported that Russette had a blood alcohol concentration of .176.

¶4 Ultimately, Russette pled not guilty in the Justice Court to driving under the influence of alcohol and the case proceeded to a non-jury trial. On March 21, 2001, following the non-jury trial, the Justice Court found Russette guilty of "driving with a BAC of .10 or greater," a misdemeanor, in violation of § 61-8-406, MCA. On March 28, 2001, Russette appealed the Justice Court's judgment to the Twelfth Judicial District Court and requested a trial by jury on the matter.

¶5 On June 25, 2001, Russette notified the District Court that he intended to call Robert Christek as an expert witness. Christek, a chemistry professor at Montana State University Northern, was expected to testify that the Intoxilizer 5000 analysis constituted a "scientific test." While Christek admitted that he had no specific knowledge regarding the operation of the Intoxilizer 5000, he intended to testify that a scientific test is not valid or reliable until at least two tests have been performed pursuant to the principles of the "scientific method." The State argued that Christek's anticipated testimony was inadmissible because he had no specific knowledge regarding the Intoxilizer 5000 and, thus, his

3

testimony would not help the jury to understand the evidence or determine a fact in issue. The District Court agreed with the State and, consequently, prohibited Christek from testifying.

¶6 On July 25, 2001, a jury found Russette guilty of "driving a motor vehicle on the ways of this state with a blood alcohol content of 0.10 or more," a misdemeanor, in violation of § 61-8-406, MCA. The District Court sentenced Russette to ten days in the Hill County Jail, all suspended with conditions, fined Russette $320.00, and suspended Russette's drivers' license. On August 3, 2001, Russette filed a notice of appeal from the District Court's sentence and judgment. Russette contends that the District Court erroneously prohibited Christek from testifying, in violation of Rule 702, M.R.Evid., and his constitutional rights to due process and to call witnesses on his own behalf.

## STANDARD OF REVIEW

¶7 The admissibility of evidence is left to the discretion of the district court judge. *State v. Lancione*, 1998 MT 84, ¶ 20, 288 Mont. 228, ¶ 20, 956 P.2d 1358, ¶ 20. This Court reviews a district court's evidentiary ruling to determine whether the court abused its discretion. *Lancione*, ¶ 20. An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Ingraham v. State* (1997), 284 Mont. 481, 485, 945 P.2d 19, 22.

## DISCUSSION

¶8 Did the District Court abuse its discretion when it refused to allow Russette's expert to testify at trial?

4

¶9 Russette argues that as he "stood trial for driving with a blood alcohol level of .10 or greater, the central issue was whether the scientific test which resulted in an alleged blood alcohol level of .176 was valid." Russette insists that Christek had specialized experience regarding the validity of scientific tests. Russette sought to inform the jury, through Christek's testimony, that when conducting a scientific test, one must perform at least two analyses to obtain a scientifically valid result. Russette theorized that the result obtained from the Intoxilizer 5000 was not scientifically valid as the State administered only one test. Russette admits that Christek possessed merely a "general understanding" of the Intoxilizer 5000 and "doesn't know the interworkings of it." However, Russette contends that Christek's lack of familiarity with the Intoxilizer 5000 should have affected the weight and credibility of his testimony and not the admissibility of it.

¶10 As indicated above, Russette attempted to call Christek as an expert witness at trial and the State objected. Accordingly, the District Court requested an offer of proof as to Christek's anticipated testimony. After listening to arguments from each party, the District Court concluded:

> The evidence is submitted under Rule, Chapter 7, probably Rule 703, that this gentleman is an expert witness. He's not here as a layman, and he is to give an opinion concerning the scientific method. The only relevance to this gentleman's opinion is [to] create an argument, which is you can create arguments by use of experts that the test was improperly done and that the results of said test are improper.

In order to do that, the witness must have some foundation that this test was done improperly, that he has some familiarity with this machine, that he has some knowledge whereof he speaks, that he has knowledge of the facts that are in issue of this case, and that the test in this instance, in the opinion of the witness, based upon his knowledge, is either questionable or invalid and in his opinion the reliance of the jury on the test should be diminished because this is what we're talking about.

. . . .

[Y]ou are trying to establish that the State isn't doing this right, for reasons that you've stated on the record, and in order to do that, you have to have somebody that knows whereof they speak that they are not doing this right, they have to know something about this machine and have to be able to, with the proper foundation, say this isn't a good test, and your witness can't do that.

. . . So I exclude the witness based upon the offer of proof.

¶11    Rule 702, M.R.Evid., governs the admissibility of expert testimony and provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

The test for admissibility of expert testimony is whether the matter is sufficiently beyond common experience that the opinion of the expert will assist the trier of fact to understand the evidence or to determine a fact in issue. *Hulse v. State, Dept. of Justice*, 1998 MT 108, ¶ 48, 289 Mont. 1, ¶ 48, 961 P.2d 75, ¶ 48. Hence, in conducting an admissibility analysis, a district court must determine: (1) whether the subject matter of the testimony is one that requires expert testimony; and (2) whether the particular witness is qualified as an expert to give an opinion in the

6

particular area on which he or she proposes to testify. *State v. Southern*, 1999 MT 94, ¶ 49, 294 Mont. 225, ¶ 49, 980 P.2d 3, ¶ 49. Rule 702, M.R.Evid., implicitly requires a foundation showing that the expert has special training or education and adequate knowledge on which to base an opinion. *Southern*, ¶ 49.

¶12 The District Court's oral admonition contained no reference to the first prong of the admissibility analysis articulated above. Instead, the District Court's rationale appears grounded in the qualification portion of the analysis. For purposes of this case, we presume that consideration of the mechanically analyzed breath sample was an appropriate subject matter for expert testimony and, therefore, will focus our attention on the second prong of the admissibility analysis.

¶13 Russette argues that Christek's testimony was to "pertain solely to the existence and meaning of the scientific method," i.e., the proposition that scientific validity requires multiple, corroborating analyses. Christek may well have received specialized training which would qualify him as an expert witness on matters within his area of expertise. Perhaps Christek had sufficient education and training to offer commentary on the intricacies of the scientific method. However, at some point, Christek would have had to apply his theories to the facts at hand to "assist the trier of fact to understand the evidence or . . . determine a fact in issue," as required by Rule 702, M.R.Evid.

¶14 The party presenting a witness as an expert must establish, to the satisfaction of the trial court, that the witness possesses the

7

requisite knowledge, skill, experience, training, and education to testify as to the issue in question. *O'Leyar v. Callender* (1992), 255 Mont. 277, 280-81, 843 P.2d 304, 306. According to Russette, Christek sought to call into question the validity of the Intoxilizer 5000 analysis. Yet, by Russette's own admission, Christek lacked familiarity with the "interworkings" of the Intoxilizer 5000. In short, Russette failed to lay any foundation which showed that Christek had adequate knowledge upon which to challenge the "fact in issue," which was the validity of the Intoxilizer 5000 test result. Accordingly, we hold that the District Court did not abuse its discretion when it precluded Christek from testifying.

¶15 On appeal, Russette also maintains that the District Court violated his constitutional rights to due process and to call witnesses when it rejected the proffered testimony. However, Russette raises these issues for the first time on appeal. It is axiomatic that we will not address issues raised for the first time on appeal and, therefore, we decline to further address these assertions.

¶16 Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JIM RICE

8

/S/ W. WILLIAM LEAPHART