No. 03-066

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 373N

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

CHESTER LAWRENCE PRICE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and for the County of Fergus, Cause No. DC 2001-35,
The Honorable E. Wayne Phillips, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Gary E. Wilcox, Attorney at Law, Billings, Montana

            Jeffrey G. Michael, Attorney at Law, Billings, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

            Thomas Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  September 18, 2003

Decided:  December 30, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of non-citable cases issued by this Court.

¶2 On August 21, 2001, the State charged Chester Lawrence Price (Price) with sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA. A Fergus County jury returned a guilty verdict on June 6, 2002. On December 5, 2002, the District Court sentenced Price to forty years at Montana State Prison. Price appeals from this conviction. We affirm.

BACKGROUND

¶3 Price's charges arise out of an incident that took place in the early hours of August 11, 2001, when he allegedly had sexual intercourse with his fourteen year old niece, C.W., without consent. C.W. lived with her mother and father, Cathy and Steve, and her half brother, Clint, in Lewistown. Price lived in the same town with his wife, Faye, and two of their three daughters. Price and C.W.'s mother are siblings and have three other sisters, two of whom testified: Melinda "Mindy" Riehl and Shannon Rausch.

¶4 At the time of the incident, Steve and Cathy were traveling to Colorado for the purpose of returning Clint's two small children to their mother, Clint's former wife. Due to a sexual offense he committed in Colorado, Clint could not personally transport his children

2

home.

¶5    On August 10, 2001, Price, Faye, two of their daughters, C.W., and Clint met at the Town Pump and decided to have dinner and go boating on East Fork Lake near Lewistown. When they got back to town, C.W. and Clint went to Albertson's so Clint could purchase beer. Price testified that he and Faye were concerned for C.W.'s safety and insisted that C.W. return to the Price residence rather than attend a party with Clint.

¶6    Upon arriving at the Price residence, Clint and Price got into a physical altercation about where C.W. was going stay that night. As will be relevant later, Price's daughter gave C.W. one of Price's dirty shirts to wear because her clothing had gotten wet at the lake. Clint ultimately left the residence. On his departure, C.W. was concerned about Clint's safety because of the amount of alcohol he had consumed. Consequently Price and C.W. went to look for Clint and found him at a baseball field. Another argument erupted between Price and Clint but they eventually reconciled. Nevertheless, neighbors believed there was a fight taking place and called the police. When the police arrived, they arrested Clint and took him into custody.

¶7    C.W. and Price then returned to the Price's house; C.W. stated that she was upset over her brother's arrest. C.W. testified that once she calmed down, she, Price and Faye reclined on an air mattress to watch television. Price testified that only the women were on the air mattress while he was on the floor. C.W. stated that she really wanted to go home and Faye then told her that she would take her home after some rest. C.W. testified that she pretended to sleep with hopes of leaving the Price residence for a friend's home after Price and Faye

3

fell asleep.

¶8     C.W. testified that after Faye fell asleep, Price started rubbing her sides and chest. Gradually he proceeded to move his hands down below her waist under her clothing. C.W. testified that Price then woke Faye and took her up to her bedroom. C.W. again planned to wait a few minutes and then leave, but Price returned to the air mattress. The inappropriate touching continued followed by kissing. C.W. stated that Price removed her shorts and underwear and began to lick her. He also pushed up her shirt and swimsuit top. C.W. testified that she told him "no" at least thirty times. Despite these protestations, he penetrated her vagina with his fingers and tongue and licked her breasts. C.W. stated that Price eventually stopped and she got dressed and ran to a neighbor's house to get help. Price denies ever touching C.W.

¶9     After staying at a friend's house, C.W. went home and washed all of her clothing except her swimsuit top. When Cathy came home on August 12, 2001, in the presence of police, C.W. told her what had happened. Cathy took her daughter to the hospital where doctors examined her including completing a rape kit with vaginal swabs. During the examination, Cathy took the swimsuit top and delivered it to the police. Michelle Griffin, a forensic scientist at the Montana State Crime Lab, testified a trace of amylase–an enzyme in saliva–was found in the vaginal swabs, concluding that there was saliva present in C.W.'s vaginal vault. However, the sample did not contain sufficient amounts to develop a DNA profile. Griffin further testified that she found four biological stains on the inside of the swimsuit top testing positive for amylase. The DNA analysis excluded Steve, Cathy and

Clint, however, Price's DNA profile proved to be consistent with the stain. While the defense chose not to dispute the DNA results, it explained that the presence of Price's DNA on C.W.'s swimsuit top was attributed to the dirty shirt that C.W. wore over her swimsuit top after returning from the lake. The defense claimed that Price's nasal discharge on the shirt transferred onto C.W.'s swimsuit top.

¶10 At trial, Price's defense consisted of a two-fold theory. First, as a result of longstanding animosity between family members, Price believed his sister's family framed him for this alleged crime. Second, he claimed that his sister's family planted certain evidence in order to frame him or protect their son, Clint. There was a conflict in testimony pertaining to the description of the swimsuit top C.W. wore that night. Prosecution witnesses testified that the top admitted into evidence was the same top worn by the victim that day, being blue with flowers and a beige lining with a plastic clasp. Conversely, the defense presented testimony claiming the top actually worn by C.W. was lighter blue and had a white tie around the neck.

¶11 Mindy, Price's sister, testified that she took care of Clint for two years, and during that time, her daughters refused to stay with her because they feared Clint. After her testimony, she apparently consulted with Price's attorney concerning a conversation she had with C.W., after Clint allegedly committed a sex offense in Colorado. She offered to resume the witness stand and testify that during that conversation, C.W. told her that Steve and Cathy had taken the Colorado victim's underwear and rubbed it all over their bed hoping to confuse the DNA results. Price wanted to question C.W. to determine whether she had this conversation with

5

Mindy, and then put Mindy back on the stand to testify about the content of this conversation. C.W. testified that she recalled having a conversation with Mindy, but denied telling her about any evidence tampering. The District Court denied Price's request to put Mindy back on the stand to testify about the conversation because the solicited testimony was not inconsistent with C.W.'s testimony, and thus not allowed under Rule 801(d)(1), M.R.Evid., and also inadmissible under Rule 608(b), M.R.Evid.

¶12 The defense also wanted to present evidence that it was Clint who actually perpetrated the crime against C.W., not Price. Price intended to introduce Clint's prior conviction of an unrelated sex offense in Colorado. The District Court denied Price's request to admit Clint's prior conviction.

¶13 The jury convicted Price of sexual intercourse without consent, and it is from this conviction that he now appeals. The following two issues are raised in this appeal:

¶14 1. Did the District Court abuse its discretion when it refused to allow the defendant to introduce evidence of a prior inconsistent statement of a witness?

¶15 2. Did the District Court abuse its discretion when it refused to allow the defense to introduce evidence designed to show that Clint rather than Price committed the assault?

STANDARD OF REVIEW

¶16 We review a district court's evidentiary rulings to determine whether the district court abused its discretion. *State v. DuBray*, 2003 MT 255, ¶ 67, 317 Mont. 377, ¶ 67, 77 P.3d 247, ¶ 67. A district court has broad discretion to determine whether evidence is relevant and admissible. Absent a showing of abuse of discretion, we will not overturn a court's

6

evidentiary determination. *State v. Bingman*, 2002 MT 350, ¶ 31, 313 Mont. 376, ¶ 31, 61 P.3d 153, ¶ 31. An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *State v. Russette*, 2002 MT 200, ¶ 7, 311 Mont. 188, ¶ 7, 53 P.3d 1256, ¶ 7.

DISCUSSION

ISSUE ONE

¶17    Did the District Court abuse its discretion when it refused to allow the defendant to introduce evidence of a prior inconsistent statement of a witness?

¶18    The District Court ruled that certain testimony by Price's sister, Mindy, was "highly inflammatory and lacked corroboration" and not admissible as a prior inconsistent statement under Rule 801(d)(1)(A) or as a specific instance of conduct under 608(b), M.R.Evid. Price claims the District Court precluded him from presenting the jury with his theories of the case, namely, that Clint was the probable perpetrator of the crime and an explanation of how the stain got on the swimsuit top. He argues that Mindy would have testified about a prior conversation with C.W. during which C.W. allegedly told her that Cathy and her husband, Steve, had tampered with evidence in order to disturb the DNA results in Clint's sex offense case in Colorado.

¶19    As a preliminary matter, we agree with the State's observations that it would have been impossible for Clint to have committed the crime since he was in police custody when the incident occurred. Further, the State correctly points out that Mindy's testimony concerning past alleged evidence tampering was irrelevant to the two theories in which the

7

defendant asserted. Price presents no foundation to establish how his sister's family may have acquired his DNA to plant on C.W.'s swimsuit top other than through his nasal discharge left on a dirty T-shirt. Testimony from the State Crime Lab representative indicates that such a transfer could only take place in two ways, neither of which is submitted by Price.

¶20 More importantly, the Colorado evidence tampering in an unrelated case bears no relevance to the present offense. The proffered evidence absent a proper foundation would have confused the jury and was inadmissible under Rule 403, M.R.Evid. Finally, the State argues that Mindy's testimony is barred under Rule 608(b), M.R.Evid., because using specific instances of conduct for the purpose of casting doubt on C.W.'s veracity is not permitted on direct examination of another witness.

¶21 We agree with the State. It is clear from the record that the District Court was concerned with the nature of the testimony Price was attempting to admit through Mindy. The court noted that the evidence was "highly inflammatory and lacked corroboration." The District Court expressed classic concerns that are enumerated in Rules 402 and 403, M.R.Evid. This evidence was both irrelevant and confusing. The testimony offered by Mindy bears no relevance to the origin of the stains on the swimsuit top or to the claim that the top admitted into evidence was not one worn by C.W. Moreover, the evidence fails to support Price's theory that the origin of the stain was from someone other than Price. We conclude that the District Court properly excluded the proffered testimony of Mindy under Rules 402 and 403, M.R.Evid., when it concluded that the evidence was "highly

8

inflammatory and lacked corroboration." Having concluded that the evidence was properly excluded under these Rules, we see no need to analyze it further under Rules 801(d)(1) and 608(b), M.R.Evid.

## ISSUE TWO

¶22 Did the District Court abuse its discretion when it refused to allow the defense to introduce evidence designed to show that Clint rather than Price committed the assault?

¶23 Price contends he was wrongfully denied the opportunity to introduce evidence of Clint's prior criminal record, and thus precluded from arguing that Clint actually committed the offense for which Price was charged. In excluding the evidence, the District Court determined that it was not admissible under § 45-5-511(2), MCA, Montana's Rape Shield Statute, or Rule 404(b), M.R.Evid. Price suggests that this denial violated his right to confront and cross-examine witnesses as guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 24 of the State of Montana Constitution.

¶24 While Price recognizes that the right of confrontation is not absolute and the Rape Shield Statute has been interpreted as a legitimate interest to justify limitation on this right, he maintains that the purpose of introducing the evidence was to show that C.W. was victimized by someone other than Price. Price reasoned that evidence of Clint's prior conviction would illustrate why C.W. was fearful of Clint and would cast doubt on the swimsuit top admitted as being the same one worn by C.W. that evening.

¶25 Without addressing the Montana Rape Shield Statute, we agree that the evidence was properly excluded under Rule 404(b), M.R.Evid. Moreover, the State asserts, and we agree,

9

that Price's claim that he was denied the right to confront and cross-examine witnesses is barred due to failure to preserve the issue for appeal.

¶26 Rule 404(b), M.R.Evid., prohibits admission of specific crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. The District Court found that the defense did not present a specific instance of the victim's sexual activity to show the origin of the fluid in C.W.'s vaginal vault, just mere allegations about Clint and his family's behavior. We conclude that the District Court did not abuse its discretion when it denied Price's request to admit evidence designed to show that Clint, not Price, committed the crime.

¶27 We affirm.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA COTTER

10