No. 00-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 45

STATE OF MONTANA,

Plaintiff and Respondent,

v.

PHILIP R. LANDIS,

Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Michael Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matthew R. Cleverly; Weinstein, Manley, Riley, Therriault & Singer,
Seattle, Washington

Brock Albin; Albin Law Office, Bozeman, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Cregg W. Coughlin,
Assistant Attorney General, Helena, Montana

Bernie Cassidy, Lincoln County Attorney; Robert Slomski, Deputy
County Attorney, Libby, Montana

Submitted on Briefs:  September 27, 2001

Decided: March 12, 2002

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Phillip R. Landis (Landis) appeals from the judgment entered by the Nineteenth Judicial District Court, Lincoln County, and, specifically, from the court's rulings on pre-trial, trial and post-trial motions.  We affirm.

¶2    The issues on appeal are:

¶3    1.  Did the District Court err in not dismissing the case for lack of probable cause?

¶4    2.  Did the District Court abuse its discretion in denying Landis' motion for a directed verdict?

¶5    3.  Did the District Court abuse its discretion in denying Landis' Motion for a New Trial and Request for Recusal?

## BACKGROUND

¶6    Landis became associated with the community of Libby, Montana, through Terry Larimer (Larimer), Lincoln County Regional Director of Woodnet, an organization helping unemployed timber industry workers.  Larimer invited Landis to give a presentation in Libby on growing, harvesting and marketing organic Reishi mushrooms for profit.  During that presentation in October of 1997, Landis reported a high demand for Reishi mushrooms, and stated his company would train and certify people in growing and harvesting Reishi mushrooms for a fee of $3,600.  Landis stated the training package included two video seminars, two hands-on seminars, and several sections of "distance learning materials" comprised of educational text and short quizzes.  He also stated his company would buy mushrooms harvested from certified growing operations or from the wild (wild-harvested).

¶7    During this first meeting, Landis distributed literature representing growers would gross approximately $70,000 a year and stated his company would reinvest money back into the community, creating up to 150 jobs.  A spreadsheet included in Landis' materials estimated each grower potentially could net approximately $80,000 in the fourth year of operation.

¶8    After the initial presentation, Larimer traveled to Idaho to meet with Landis about setting up his own growing operation.  He subsequently paid Landis $3,600 and entered into a training contract for growing and harvesting Reishi mushrooms.  A condition in Larimer's contract specified that, after harvesting began, Landis would only buy back mushrooms grown from spawn--that is, mushroom

cultures covering short wooden dowels used to innoculate logs--purchased from his company or a company he had approved.

¶9    Landis returned to Libby in February of 1998 and gave a second presentation which was substantially similar to the one he gave in October of 1997.  At that meeting, several area residents, led by Lerah Parker (Parker), a local nursery owner, expressed interest in forming a cooperative with the object of obtaining training for the entire group and paying only one training fee.  After the presentation, Larimer approached Parker and offered to sell his training contract to her group, and then join the group himself, in order to save money and training fees.  Parker and Larimer consulted Landis and obtained his permission for the sale of Larimer's contract to the group.  The individual members of Parker's group gave money to Parker for her purchase of the training contract and she subsequently purchased it on behalf of the informal cooperative, Northwest Montana Reishi (co-op).

¶10    The co-op commenced its training by distributing educational material sections, homework assignments and quizzes, a few of which were obtained from Larimer after the sale of the contract, and the rest supplied by Landis.  The members met once a week to turn in homework and quizzes and to discuss issues related to their training.  After the meetings, Parker would send the completed homework and quizzes to Landis at his home in Idaho for corrections and comments.  Landis corrected and returned the first two sections, but claimed he did not receive any other materials from Parker.

¶11    As a continuation of its training, the co-op scheduled its first hands-on planting seminar with Landis for April 18, 1998, and then rescheduled the seminar for April 25, 1998, at Landis' request.  In advance of the training seminar, from late March to early April, Parker collected an additional $4,620 from the members of the group to order and pay for approximately 14,000 dowels of spawn from Landis.  Landis confirmed in a mid-April e-mail to Parker that he had received payment for the order and informed Parker that production of the spawn was "on schedule."  In early April of 1998, Larimer sent approximately 15 pounds of wild-harvested mushrooms to Landis, relying on Landis' initial representation that he would buy wild-harvested Reishi mushrooms.  Landis stated he never received them.

¶12    On the morning of April 25, 1998, more than twenty people from the co-op, together with observers from an interested Idaho group, gathered at Parker's nursery for the planting seminar.  Just before the seminar was to begin, Landis telephoned both Larimer and Parker  and stated he had been in a vehicle accident and did not know the location of his vehicle or the spawn the co-op had ordered.  The group attempted to locate Landis' wrecked vehicle and the spawn in order to carry on with the seminar, but were unable to obtain any information about the accident or the whereabouts of the vehicle.  The training continued that day and members of the group planted spawn Parker had obtained from a company not pre-approved by Landis.

¶13    After Landis' failure to attend the April 25, 1998 planting seminar, Parker stepped down as the leader of the co-op.  James Myers (Myers), a licensed professional counselor, assumed the leadership role.  Members of the co-op continued making inquiries into Landis' accident in order to locate and retrieve the spawn, and the relationship between Landis and the co-op deteriorated rapidly.  On April 30, 1998, Myers sent Landis a certified letter requesting return of the co-op's money.  When Myers did not

receive the money by May 6, 1998, he notified the Lincoln County Sheriff's Office, which initiated a criminal investigation.

¶14    The State of Montana (State) charged Landis with one count of felony theft and one count of felony deceptive practices.  At his arraignment on May 17, 1999, Landis entered "not guilty" pleas to both charges.  Approximately three months after the July 22, 1999, omnibus hearing, Landis filed a motion for a probable cause hearing which the District Court denied as untimely.  Landis filed a motion to dismiss, which asserted lack of evidence but in essence argued lack of probable cause to support the charges, on November 18, 1999, together with another motion for a probable cause hearing.  The court also denied those motions.

¶15    Landis' jury trial began on December 7, 1999, and he moved for a directed verdict of acquittal at the close of the State's case-in-chief.  The District Court denied the motion and the jury found Landis guilty of the felony offenses of theft and deceptive practices.  The District Court sentenced him to a 10-year suspended sentence on each count and entered judgment.

¶16    In February of 2000, Landis filed a motion for a new trial and a request for recusal, a notice of appeal, a motion to stay imposition of sentence pending appeal, and a motion to alter or amend judgment.  Landis subsequently withdrew his notice of appeal pending the resolution of his other post-trial motions.  The District Court denied Landis' motions for a new trial and request for recusal and to alter or amend judgment, but granted his request to stay imposition of sentence pending appeal.  Landis appeals.

## DISCUSSION

¶17    1.  Did the District Court err in refusing to dismiss the case for lack of probable cause?

¶18    As set forth above, the District Court denied Landis' motions for a probable cause hearing and to dismiss for lack of probable cause.  On appeal, Landis continues to assert that the charges against him are not supported by probable cause.  In response, the State contends that the District Court's basis for denying his original motion, namely, lack of timeliness, is correct and that Landis has failed to address that basis.  Landis did not reply to the State's contention.

¶19    By statute in Montana, certain matters must be raised during the early stages of a criminal proceeding.  In that regard, § 46-13-101, MCA, provides in pertinent part:

> (1) Except for good cause shown, any defense, objection, or request that is capable of determination without trial of the general issue must be raised at or before the omnibus hearing. . . .
> (2) Failure of a party to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court, constitutes a waiver of the defense, objection, or request.

¶20     Allegations of lack of probable cause to support criminal charges, whether raised via a motion to dismiss or motion for probable cause hearing, are defenses or objections which can be determined without trial of the general issue.  Thus, § 46-13-101(1), MCA, required Landis to raise the probable cause issue "at or before the omnibus hearing."  His omnibus hearing occurred on July 22, 1999, and Landis filed his probable cause-related motions in October and November of 1999.  Accordingly, Landis' motions were not timely filed under § 46-13-101(1), MCA, and, pursuant to § 46-13-101(2), MCA, he waived any issue of lack of probable cause.

¶21     We hold the District Court did not err in refusing to dismiss the case for lack of probable cause.

¶22     2.  Did the District Court abuse its discretion in denying Landis' motion for a directed verdict?

¶23     We review a district court's denial of a motion for directed verdict in a criminal case to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  See State v. Hall, 1999 MT 297, ¶19, 297 Mont. 111, ¶ 19, 991 P.2d 929, ¶ 19 (citation omitted).  The decision is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion.  See State v. Berger, 1998 MT 170, ¶ 25, 290 Mont. 78, ¶ 25, 964 P.2d 725, ¶ 25 (citations omitted).

¶24     Landis requested a directed verdict of acquittal on the theft and deceptive practices charges at the close of the State's case-in-chief.  The District Court denied Landis' request on the grounds that sufficient conflicting evidence existed in the record with respect to both counts to require factual determinations by the jury.  While Landis couches his assertions of error in terms of "matters of law," the questions he presents in this issue clearly revolve on whether the State presented sufficient evidence on the elements of the charged offenses.

¶25     With regard to the theft offense, the State charged that, as a common scheme, Landis worked between December of 1997 and May of 1998 to deprive owners of $4,620.  Landis argues that the State did not produce evidence that he deprived an "owner" of property.

¶26     Section 45-6-301, MCA, defines theft, in pertinent part, as follows:

> (2) A person commits the offense of theft when the person purposely or knowingly obtains by threat or deception control over property of the owner and:
>     (a) has the purpose of depriving the owner of the property[.]

In addition, § 45-2-101(52) and (56), MCA, respectively, define "Owner" and "Person" as follows:

> "Owner" means a person other than the offender who has possession of or other interest in the property involved, even though the interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property.
> "Person" includes an individual, business association, partnership, corporation,

government, or other legal entity and an individual acting or purporting to act for or on behalf of a government or subdivision of government.

¶27 Landis argues he took money from the co-op, which is not a "Person" under § 45-2-101(56), MCA, because it never became a legal entity. He further reasons that, if the co-op is not a "Person," it cannot be an "Owner" and, therefore, the State did not present evidence establishing he took money from an "Owner." His argument is without merit.

¶28 Under the statutory definition, a "'Person' includes an individual . . . ." See § 45-2-101(56), MCA. The record in the present case is undisputed that, while Parker forwarded the $4,620 to Landis "on behalf of" the informal co-op, numerous individuals provided the money to Parker to pay Landis for the spawn. We conclude that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the "Owner" element of the theft offense beyond a reasonable doubt. Landis does not challenge the sufficiency of the evidence regarding any other essential element of the theft offense.

¶29 With regard to the deceptive practices offense, the State charged that, as a common scheme, Landis made false or deceptive statements between December of 1997 and May of 1998 for the purpose of promoting or procuring the sale of Reishi spawn and training. A person commits deceptive practices when he or she purposely or knowingly makes a false or deceptive statement to any person for the purpose of promoting or procuring the sale of property or services. Section 45-6-317(1)(b), MCA. Landis claims his only deceptive statements were related to the vehicle accident, the accident occurred after he received the money from Parker and, therefore, the deceptive statements were not made for the purpose of promoting or procuring the sale of the spawn or the training.

¶30 The first problem with Landis' argument is that it focuses solely on the evidence most favorable to him--namely, his testimony that he only made false statements regarding the vehicle accident--and ignores the State's evidence in support of its common scheme charge alleging Landis made deceptive statements over the course of his relationship with the members of the co-op for the purpose of promoting the sale of Reishi spawn and related training. The second problem, of course, is that it was within the province of the jury to determine the credibility of witnesses and the weight of conflicting evidence. See State v. Weitzel, 2000 MT 86, ¶ 20, 299 Mont. 192, ¶ 20, 998 P.2d 1154, ¶ 20 (citations omitted). So long as sufficient evidence existed on which a rational jury could find the elements of the charged offense beyond a reasonable doubt, the District Court did not abuse its discretion in denying Landis' motion for a directed verdict on the deceptive practices charge. See Hall, ¶ 19.

¶31 It is true that the only direct evidence of Landis' false or deceptive statements came from Landis himself, and that evidence limited his false statements to those made after he had the money from members of the co-op. It is equally true that no other person involved in this case was in a position to testify directly to lies or deceptions made by Landis.

¶32 Direct evidence is not necessary to establish the elements of a criminal offense, however. Indeed, a criminal conviction may be based entirely on circumstantial evidence. See Hall, ¶ 22 (citation

omitted). Section 26-1-102(1), MCA, defines circumstantial evidence as "that which tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence." Circumstantial evidence need only be of sufficient quality and quantity to legally justify a jury in finding guilt beyond a reasonable doubt, taking into consideration all of the facts and circumstances surrounding the charged offense collectively. State v. Clausell, 2001 MT 62, ¶ 31, 305 Mont. 1, ¶ 31, 22 P.3d 1111, ¶ 31 (citation omitted); § 26-1-102(1) MCA. Montana law clearly permits a jury to draw inferences from circumstantial evidence presented at trial. See State v. Heffner, 1998 MT 181, ¶ 30, 290 Mont. 114, ¶ 30, 964 P.2d 736, ¶ 30 (citing § 26-1-501, MCA).

¶33 In the present case, the record reflects that, in his presentations, including the presentation in February of 1998 to individuals who later formed the informal co-op, Landis stated that in exchange for the $3,600 training fee, trainees would become certified to grow and harvest Reishi mushrooms through video seminars, two hands-on planting seminars, and written educational materials followed by short quizzes. Larimer and Myers also testified Landis distributed a spreadsheet indicating growers could net approximately $80,000 after tax in their fourth year of operation. Contrary to Landis' representations, the members of the co-op did not receive video or hands-on training. Nor did any of the members become certified in, or make any profit from, his program.

¶34 The evidence at trial also reflects that the literature Landis distributed at his presentations stated tens of thousands of dollars would be reinvested into local rural development agencies by Landis' company, Idaho Reishi, and that 150 jobs would be created in every participating community. In fact, Landis' company did not invest money into the Libby community, nor were any new jobs created there. According to the testimony of Larimer and Myers, Landis also stated in both meetings that he would purchase wild-harvested mushrooms from growers as a way for them to fund their growing operations. Larimer testified he sent 15-pounds of wild-harvested mushrooms to Landis in early April and never received payment. Landis claimed he never received the mushrooms.

¶35 The record also reflects that, after the informal co-op organized in February of 1998, members of the group completed training sections one, two, three, four and seven in preparation for the first hands-on planting seminar. Parker testified she mailed the individually-completed sections one and two to Landis in late March of 1998, and he corrected and returned them. Parker also testified she sent Landis completed sections three, four and seven in three separate mailings from late March to mid-April of 1998. Similar to his testimony regarding Larimer's mushrooms, Landis claimed he never received these sections.

¶36 In addition, Parker sent Landis $4,620 in early April of 1998 to purchase spawn for the upcoming planting seminar. Parker testified Landis e-mailed her stating he had received payment for the spawn and that he would deliver the spawn on April 25, 1998, at the planting seminar. For approximately two weeks in April, before Landis' fictitious vehicle accident, Larimer and Parker testified they were unable to reach him by e-mail, telephone, or through the postal service. Landis claimed he was in the process of moving offices. Ultimately, Landis did not attend the April 25, 1998 planting seminar or deliver the spawn on that date as previously agreed.

¶37     Here, the State was required to prove the following elements to support a conviction on the deceptive practices charge: 1) Landis made statements to persons; 2) the statements were made for the purpose of promoting or procuring the sale of Reishi spawn and training; and 3) the statements were purposely or knowingly false or deceptive.  See § 45-6-317(1)(b), MCA.  The State presented substantial direct evidence of the numerous statements Landis made to many people during his presentations and, thereafter, for the purpose of promoting the sale of Reishi spawn and training.  The State also presented substantial direct evidence that Landis did not follow through on most of the representations and statements made; indeed, the only follow-through related to correcting and commenting on two of the individually-completed training sections sent to him.  This direct evidence also constituted circumstantial evidence that Landis never intended to follow through.  Thus, we conclude that the State's direct and circumstantial evidence, together with the inferences the jury was entitled to draw from the evidence, was of sufficient quality and quantity to justify the jury in finding that his statements over a period of months were purposely or knowingly false or deceptive.

¶38     In addition, of course, it was within the jury's sole province to determine the credibility of the witnesses.  See Weitzel, ¶ 20 (citations omitted).  Consequently, the jury was free to reject Landis' claims that he did not receive either the mushrooms sent by Larimer or the additional completed training sections sent by Parker for comment and correction.  Finally, the jury was entitled to disbelieve Landis' testimony that the only deceptive statements he made related to the vehicle accident.

¶39     On this record, we conclude that, viewing the evidence in the light most favorable to the prosecution, sufficient evidence existed from which a jury could find, beyond a reasonable doubt, that Landis made false and deceptive statements over a period of months to promote and procure the sale of property and services.

¶40     We hold the District Court did not abuse its discretion in denying Landis' motion for a directed verdict.

¶41     3.  Did the District Court abuse its discretion in denying Landis' Motion for a New Trial and Request for Recusal?

¶42     We review a district court's ruling on a motion for new trial for an abuse of discretion.  State v. Cline (1996), 275 Mont. 46, 51, 909 P.2d 1171, 1174.

¶43     Landis filed a motion for new trial and request for recusal in February of 2000, after entry of judgment.  He based his motion on an alleged appearance of impropriety created by an undisclosed professional relationship between the District Court and Myers, one of the State's witnesses and a victim of the charged offenses; the "relationship" was the District Court's occasional use of Myers to prepare psychosexual and mental health evaluations in cases before the court.  Notwithstanding the untimeliness of the motion for a new trial under § 46-16-702(2), MCA, the District Court conscientiously addressed, and then denied, the motion.

¶44     Landis argues he was denied a fair and impartial trial because the judge should have recused himself in order to avoid an appearance of impropriety.  He further argues that whether the court was

actually improperly influenced by its relationship with the victim is irrelevant, because the appearance of impropriety is enough to warrant a new trial and recusal.

¶45    The only authorities Landis advances in support of his position are Montana Ethics Opinion 950721 (1995) and Montana Ethics Opinion 881130 (1988).  Ethics opinions such as these are issued by the State Bar of Montana's Ethics Committee on the request of a Montana attorney.  Even with regard to the attorney requesting it, an Ethical Opinion is advisory only and is not an authoritative pronouncement of the law.  See Campbell v. Bozeman Investors of Duluth, 1998 MT 204, ¶ 38, 290 Mont. 374, ¶ 38, 964 P.2d 41, ¶38.  In addition, Ethical Opinions by the Ethics Committee do not relate in any way to Montana judges, since such opinions interpret the Rules of Professional Conduct applicable to Montana attorneys.

¶46    Canon 4 of the Canons of Judicial Ethics, applicable to Montana judges, prohibits the appearance of impropriety in any proceeding.  See Canons of Judicial Ethics (1963), 144 Mont. xxii-xxiii (adopted May 1, 1963).  Landis fails to advance any authority decided under either that Canon or a judicial ethical rule in any other jurisdiction holding that an occasional professional relationship such as existed between Myers and the District Court in the present case constitutes an appearance of impropriety giving rise to the necessity of recusal or a right to a new trial.

¶47    Finally, the jury in this case, not the District Court, determined Myers' credibility.  Thus, any undisclosed occasional relationship between the witness and the District Court had no bearing on the ultimate resolution of Landis' case by the jury.

¶48    We hold the District Court did not abuse its discretion in denying Landis' motion for a new trial and request for recusal.

¶49    Affirmed.

/S/ KARLA M. GRAY


We concur:

/S/ JIM REGNIER<br>
/S/ PATRICIA COTTER<br>
/S/ TERRY N. TRIEWEILER<br>
/S/ JIM RICE