No. 02-702

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 363

STATE OF MONTANA,

Plaintiff and Respondent,

v.

GWEN McMAHON,

Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 2000-919
The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary Wilcox, Attorney at Law, Billings, Montana

For Respondent:

Honorable Mike McGrath, Montana Attorney General, Jennifer Anders,
Assistant Attorney General, Ryan M. Archer, Legal Intern, Helena, Montana;
Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  May 22, 2003

Decided:  December 18, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Gwen McMahon (McMahon) appeals the judgment of the Thirteenth Judicial District Court, Yellowstone County, denying her motion for a directed verdict based on insufficiency of the evidence.

¶2 We address the following issue on appeal and affirm: Did the District Court err in denying McMahon's motion for a directed verdict?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 McMahon and R.J. McMahon (R.J.) were married for nearly ten years. However, McMahon and R.J. began to experience marital difficulties, and McMahon moved out of R.J.'s house permanently near the end of October 2000.

¶4 On October 31, 2000, around 1:30 a.m., McMahon entered the 1145 Club, which R.J. owned. McMahon had previously worked at the 1145 Club, doing some book work and various other activities.

¶5 Around 1:45 a.m., R.J. asked McMahon to leave. When McMahon refused to leave, R.J. took her by the arm to escort her out. In so doing, a "yelling match" between McMahon and R.J. ensued, and McMahon attempted to punch R.J.

¶6 As R.J. continued more forcefully to escort McMahon out of the bar, McMahon pulled a gun from her purse with her finger on the trigger. In so doing, R.J. testified that he hoped the safety was on and immediately "tried to make sure that she wouldn't be able to get it fired."

¶7 R.J. tackled McMahon to the floor, in an attempt to keep the gun flat, as he testified that he thought McMahon was going to "probably shoot me, and who knows, maybe shoot somebody else." While R.J. was physically able to keep the gun flat on the floor, several other patrons of the bar assisted R.J. in obtaining the gun from McMahon, who still had her finger on the trigger.

¶8 Looking relatively calm after the incident, R.J. maintained throughout the trial that he was "not really" in fear for his life, although he did realize that he could have been shot, saying several times after the incident, "Well, thank God that's over."

¶9 McMahon was ultimately arrested and charged with assault with a weapon. She pleaded not guilty, and her case proceeded to trial. At the close of the State of Montana's (the State) case, McMahon moved for a directed verdict based on insufficiency of the evidence. The District Court denied this motion, and the jury ultimately convicted McMahon of assault with a weapon. McMahon's sentence was deferred for three years upon several conditions.

¶10 McMahon now appeals the District Court's denial of her motion for a directed verdict.

## STANDARD OF REVIEW

¶11 We review a district court's denial of a motion for directed verdict for an abuse of discretion. *State v. Landis*, 2002 MT 45, ¶ 23, 308 Mont. 354, ¶ 23, 43 P.3d 298, ¶ 23. As long as sufficient evidence exists to support the trier of fact in finding the elements of the charged offense beyond a reasonable doubt, no abuse of discretion results. *Landis*, ¶ 23. We review the evidence in a criminal trial in the light most favorable to the prosecution to

3

determine whether the trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Martin*, 2001 MT 83, ¶ 17, 305 Mont. 123, ¶ 17, 23 P.3d 216, ¶ 17.

## DISCUSSION

¶12 **Did the District Court err in denying McMahon's motion for a directed verdict?**

¶13 McMahon argues that the State produced insufficient evidence at trial to prove that R.J. had a reasonable apprehension of serious bodily injury, as required under § 45-5-213(a), MCA, since R.J. testified that he was not really afraid of McMahon during the attack. In addition, McMahon maintains that R.J.'s testimony regarding his main concern that McMahon's gun would discharge in the bar and injure a patron of the bar, rather than himself, also evidences that R.J. was not in fear of serious bodily injury.

¶14 The State counters that proof of R.J.'s fear of serious bodily injury is not required to prove reasonable apprehension under § 45-5-213(1), MCA. We agree.

¶15 Section 45-5-213(1)(b), MCA, states that "[a] person commits the offense of assault with a weapon if the person purposely or knowingly causes . . . reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon."

¶16 Serious bodily injury means bodily injury that

(i) creates a substantial risk of death;
(ii) causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or

4

(iii) at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ.

Section 45-2-101(65)(a), MCA.

¶17 We held in *State v. LaMere* (1980), 190 Mont. 332, 621 P.2d 462, that the element of fear is not required to prove reasonable apprehension, nor is "delayed apprehension" required, as McMahon asserts. Indeed, we noted that "as in civil assault, 'apprehension is not the same thing as fear.'" *LaMere*, 190 Mont. at 336, 621 P.2d at 464 (quoting W. Prosser, *Law of Torts* § 10 (4th ed. 1971)).

¶18 The issue in *LaMere* concerned whether a boy was in reasonable apprehension when the boy stated that he was not afraid at the time the defendant held a large knife to the boy's stomach and threatened that he would kill him, and instead stated that only after he left the situation did the boy realize that he could have been killed. *LaMere*, 190 Mont. at 334, 336, 621 P.2d at 463-64.

¶19 In holding that fear was not required to prove reasonable apprehension, we recognized that

> a victim may be put in a position . . . of being so startled, or shocked, or afraid, that his reaction is a delayed one. The "reasonable apprehension" may be a response that the victim is not instantly aware of, but his actions may clearly show that he apprehends the reality of the attack.

*LaMere*, 190 Mont. at 336, 621 P.2d at 464.

¶20 In addition, we noted that the legislative aim of assault statutes was to prevent breaches of the peace in situations where a victim may be provoked into breaching the peace

when placed in a position knowing that self defense is required. *LaMere*, 190 Mont. at 335, 621 P.2d at 464.

¶21 We also held in *State v. Hagberg* (1996), 277 Mont. 33, 920 P.2d 86, that in looking at the totality of the circumstances--i.e., the officer's testimony regarding his apprehension and the defendant's belligerence, alcohol odor, and glazed look--sufficient evidence existed to prove that the officer was in reasonable apprehension. *Hagberg*, 277 Mont. at 41, 920 P.2d at 90.

¶22 Here, after realizing that McMahon had pulled a gun from her purse, R.J. immediately tried to make sure that she did not fire it, as he thought she was probably going to shoot him or somebody else. R.J. and several other patrons of the bar physically struggled with McMahon in attempting to keep the gun flat and in obtaining the gun from McMahon. While R.J. maintained that he was not in fear for his life, he did testify that he later realized, much as the boy in *LaMere* did, that he could have been shot. In totality, this reaction, coupled with R.J.'s struggle with McMahon in obtaining the gun from her, and his belief that McMahon would shoot him or someone else, sufficiently establishes that he reasonably apprehended serious bodily injury. The fact that he testified that he did not fear for his life is inconsequential under our holding in *LaMere* and the legislative aim of assault statutes in general.

¶23 Therefore, we hold that the District Court did not err in denying McMahon's motion for a directed verdict.

¶24 Affirmed.

6

/S/ JAMES C. NELSON

We Concur:

/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JOHN WARNER