No. 03-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 212

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

CLAY ELWOOD McCASLIN,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                       In and for the County of Gallatin, Cause No. DC 2002-44,
                       The Honorable Mark L. Guenther, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

              Jay F. Lansing (argued), Moses Law Firm, Billings, Montana

       For Respondent:

              Hon. Mike McGrath, Attorney General; Pamela P. Collins (argued),
              Assistant Attorney General, Helena, Montana

              Marty Lambert, Gallatin County Attorney; Todd Whipple, Deputy
              County Attorney, Bozeman, Montana


                    Argued and Submitted:  April 26, 2004

                              Decided:  August 10, 2004

Filed:

                               Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Clay Elwood McCaslin (McCaslin), appeals from his conviction of Aggravated Assault, a felony in violation of § 45-5-202, MCA; Assault, a misdemeanor in violation of § 45-5-201, MCA; and Assault with a Weapon, a felony in violation of § 45-5-213, MCA, following a jury trial in the Eighteenth Judicial District Court, Gallatin County.  We affirm.

BACKGROUND

¶2    This appeal arises out of events that took place during the early morning hours of February 2, 2002.  McCaslin and Brittany Olson (Brittany) entered the Robin Bar in the Baxter Hotel, downtown Bozeman, Montana, and both ordered a drink.  The bartender, Nicholas DiBerardinis (DiBerardinis), testified that after observing McCaslin, while he appeared to be under the influence of alcohol, McCaslin did not slur his speech nor swagger while he walked.  McCaslin, a twenty-two year old 152 pound male, had been drinking prior to arriving at the Robin.  DiBerardinis asked them to leave at closing time and they left through the lobby of the Baxter Hotel onto Main Street.

¶3    Brittany and McCaslin proceeded east on Main Street towards Willson Avenue in the direction of Brittany's car and they encountered four large men from Billings at the corner: Chad Lehman, Mark Turner, Randy Stone and Dan Oltrogge.  The four men had been drinking on the way over to Bozeman from Billings and continued to drink at the bars in Bozeman.  Each man varied in degree of drunkenness.

¶4    As each group passed each other, Turner testified that he said to McCaslin, "Watch for deer," and the others snickered.  In response to what he thought was a derogatory

2

comment, "Watch out for the queer," McCaslin testified that he said, "F--off." McCaslin and the four men exchanged heated words as each group proceeded towards their cars in opposite directions, shouting across Willson Avenue. DiBerardinis heard yelling outside so he stepped out the side door of the Robin and observed the altercation. He testified that he saw McCaslin and Brittany on one side of the road and the four men on the other side; one man inside a car with the car door open and the others standing next to it. Eventually the exchange escalated and three of the four men, Lehman, Turner and Stone, crossed Willson Avenue towards McCaslin. Oltrogge remained with their car.

¶5 Lehman reached McCaslin first and the evidence conflicts at this point. It is not clear as to who threw punches, however, McCaslin testified that he ducked under a punch thrown by Lehman. McCaslin then stated that he grabbed a knife from his boot and lunged forward with the knife, cutting Lehman's pinky finger. Lehman denied punching McCaslin. McCaslin further testified that Turner then stepped in front of Lehman and he interpreted this movement as an indication that the two were joining forces against him. He further testified that he lunged at Turner with the knife in his hand puncturing Turner's chest. McCaslin testified that he used his knife to protect himself against the three men.

¶6 At or around the same time, Russell Tolman emerged from the Robin after a few drinks. He made his way over to his car in the Armory parking lot and observed the altercation before he got into his vehicle. He approached the altercation to try to calm the situation down and one of the men from Billings yelled at him to run because McCaslin would stab him. Tolman turned around and threw his hands up. McCaslin testified that he

3

thought that Tolman was one of the three men that had been aggressive towards him and he was standing his ground. McCaslin punched Tolman on the side and stabbed him in his flank area.

¶7 On November 20, 2002, a jury convicted McCaslin on three Counts. McCaslin appeals and we affirm. On April 26, 2004, this Court heard oral argument and limited the issues argued to Issues One and Three.

¶8 McCaslin raises the following issues on appeal:

¶9 1. Whether the District Court erred in instructing the jury upon the issue of intoxication as set forth in Given Instruction No. 17(a), which was based upon § 45-2-203, MCA?

¶10 2. Whether the District Court erred in admitting evidence of the Defendant's state of intoxication after his arrest?

¶11 3. Whether the District Court erred in refusing to instruct the jury regarding injury to a third party bystander while acting in self-defense?

¶12 4. Whether sufficient evidence supported McCaslin's convictions of Count I, Aggravated Assault, and Count III, Assault with a Weapon?

¶13 5. Whether the Defendant was entitled to credit for time served for time spent on house arrest prior to sentencing?

## STANDARD OF REVIEW

¶14 The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case.

4

A district court has broad discretion when it instructs the jury. *State v. Hall*, 2003 MT 253, ¶ 24, 317 Mont. 356, ¶ 24, 77 P.3d 239, ¶ 24. Statutes carry the presumption of constitutionality, therefore the party making the constitutional challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional, and any doubt must be resolved in favor of the statute. *State v. Turbiville*, 2003 MT 340, ¶ 18, 318 Mont. 451, ¶ 18, 81 P.3d 475, ¶ 18. Because the issue of whether a defendant's due process rights were violated is a question of law, we review the district court's conclusion to determine whether its interpretation of the law was correct. *Turbiville*, ¶ 10.

¶15 We review a district court's evidentiary rulings to determine whether the district court abused its discretion. *State v. DuBray*, 2003 MT 255, ¶ 67, 317 Mont. 377, ¶ 67, 77 P.3d 247, ¶ 67. A district court has broad discretion to determine whether evidence is relevant and admissible. Absent a showing of abuse of discretion, we will not overturn a court's evidentiary determination. *State v. Bingman*, 2002 MT 350, ¶ 31, 313 Mont. 376, ¶ 31, 61 P.3d 153, ¶ 31. An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *State v. Russette*, 2002 MT 200, ¶ 7, 311 Mont. 188, ¶ 7, 53 P.3d 1256, ¶ 7.

¶16 We review the evidence in a criminal trial in the light most favorable to the prosecution to determine whether the trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. McMahon*, 2003 MT 363, ¶ 11, 319 Mont. 77, ¶ 11, 81 P.3d 508, ¶ 11.

¶17 This Court reviews a district court's imposition of a sentence for legality only. *State*

*v. Mason*, 2003 MT 371, ¶ 19, 319 Mont. 117, ¶ 19, 82 P.3d 903, ¶ 19. The standard of review of the legality of a sentence is whether the sentencing court abused its discretion. *State v. Meeks*, 2002 MT 246, ¶ 15, 312 Mont. 126, ¶ 15, 58 P.3d 167, ¶ 15.

## DISCUSSION

## ISSUE ONE

¶18    Whether the District Court erred in instructing the jury upon the issue of intoxication as set forth in Given Instruction No. 17(a), which was based upon § 45-2-203, MCA?

¶19    McCaslin's main defense in this case was the justifiable use of force. The District Court instructed the jury that voluntary intoxication is not a defense to a crime. *See Montana v. Egelhoff* (1996), 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361. Jury Instruction No. 17(a) provided the following:

> A person who is in an intoxicated condition is criminally responsible for his conduct. An intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state which is an element of the offense unless the defendant proves that he did not know that it was an intoxicating substance when he consumed, or otherwise ingested the substance causing the condition.

Authority for this instruction is § 45-2-203, MCA.

¶20    McCaslin makes two arguments to support his claim that the District Court erred when it issued this instruction. He contends that the first sentence of the given instruction improperly shifted the burden of proof in violation of *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, because it created a conclusive presumption, in essence a mandate, of McCaslin's criminal responsibility. He claims the mandate is further demonstrated by the fact that the instruction has a period after "conduct" instead of "and,"

6

as reflected in the statute. Relying upon *Sandstrom*, McCaslin alleges that the contended language can easily be interpreted by a reasonable juror as creating an irrebuttable direction by the court to find intent if the State convinced the jury that McCaslin was in an intoxicated condition, effectively nullifying his defense of justifiable use of force.

¶21 Additionally, he maintains that the jury instruction violates his right to due process of law as set forth in Article II, Section 17 of the Montana Constitution. McCaslin recognizes that the United States Supreme Court in *Montana v. Egelhoff* (1996), 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361, upheld § 45-2-203, MCA, on federal constitutional grounds, but urges us to readdress this issue on independent state constitutional grounds. McCaslin asserts that the significance becomes evident when one considers the fact that the court presented the issue of negligence to the jury in the form of lesser included offense instructions. McCaslin contends that it is fundamentally unfair on the one hand, for the State to introduce evidence of his intoxicated state to illustrate that he was too intoxicated to act reasonably in self-defense, rebutting his justifiable use of force defense; and on the other hand, prohibit him from using his inebriated condition as a defense or for the purposes of determining intent. By not allowing the jury to consider McCaslin's alcohol intoxication in reference to the lesser included negligence instructions, he maintains that the State had an impermissibly reduced burden of proof as to each of the elements of the offense in violation of his rights guaranteed by the Montana Constitution.

¶22 The State maintains that McCaslin's *Sandstrom* argument fails because both the United State Supreme Court and this Court have found that § 45-2-203, MCA, does not

7

impermissibly shift the burden of proof to the defendant regarding mental state element. *See State v. Egelhoff* (1995), 272 Mont. 114, 124, 900 P.2d 260, 266; *Egelhoff*, 518 U.S. at 54, 116 S.Ct. at 2023.  Furthermore, it maintains that *Kills on Top v. State* (1995), 273 Mont. 32, 901 P.2d 1368, dispositively rejects McCaslin's claim that the first sentence of the instruction is a jury mandate to convict. *See Kills on Top*, 273 Mont. at 50, 901 P.2d at 1380 ("Even if the jury found that Appellant was intoxicated, under the instructions as a whole, the State still had to prove each of the elements of the crime in order to establish criminal responsibility.  The intoxication instruction merely advised the jury that intoxication does not excuse otherwise criminal conduct.").

¶23     Furthermore, the State asserts that textually, the due process clauses of the United States and Montana Constitutions are identical; therefore, based upon *Montana v. Egelhoff* (1996), 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed. 2d 361, § 45-2-203, MCA, does not violate Article II, Section 17 of the Montana Constitution.  Both clauses require the State to prove beyond a reasonable doubt the elements of the crime charged, and a state's legislature enjoys wide latitude when defining the elements of a criminal offense.  The State argues that through § 45-2-203, MCA, the Montana Legislature redefined the mental state element of criminal responsibility by extracting the subject of voluntary intoxication from the mens rea inquiry.  Therefore, it asserts that voluntary intoxication is legally irrelevant and has no exculpatory value in establishing the requisite mental state.  Both the Montana and United States Supreme Court have stated that such definition does not offend a defendant's fundamental right to present such evidence when determining requisite mental state.  *See*

8

*Egelhoff*, 518 U.S. at 45-48, 116 S.Ct. at 2018-21; *State v. Strauss*, 2003 MT 195, ¶ 50, 317 Mont. 1, ¶ 50, 74 P.3d 1052, ¶ 50.  As a result of McCaslin's failure to provide any basis for voiding § 45-2-203, MCA, under Montana's due process clause, the State maintains that the District Court properly exercised its discretion when it issued Given Instruction 17(a).

¶24   We agree with the State.  It is well settled that the due process clause, in both the federal and state constitutions, requires the State to prove beyond a reasonable doubt every element of a crime charged in a criminal prosecution.  *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368; *State v. Clark*, 1998 MT 221, ¶ 29, 290 Mont. 479, ¶ 29, 964 P.2d 766, ¶ 29.  Moreover, we recognize that jury instructions that shift to the defendant the burden of proof on a requisite element of mental state violate due process.  *Sandstrom*, 442 U.S. at 524, 99 S.Ct. at 2459.  However, § 45-2-203, MCA, does not shift the burden of proof of mental state to the defendant.  *Egelhoff*, 518 U.S. at 54, 116 S.Ct. at 2022.  Therefore, we see no reason to reach a different result under independent state constitutional grounds.

¶25   We also conclude that the contested instruction is not violative of *Sandstrom*.  The first sentence of the contested instruction is not a mandate to the jury to convict.  Rather, it informs the jury that voluntary intoxication does not exculpate otherwise criminal conduct in accordance with *Egelhoff*, where the United States Supreme Court determined that it is constitutional for the people of Montana to disallow "consideration of voluntary intoxication when a defendant's state of mind is at issue."  *Egelhoff*, 518 U.S. at 56, 116 S.Ct. at 2024.  Even if the jury found that McCaslin was inebriated, reading the jury instructions as a whole,

9

we conclude that the State still had the burden to prove each element beyond a reasonable doubt to establish criminal responsibility.

¶26 Finally, we are also unpersuaded by McCaslin's argument that it is fundamentally unfair for the State to be able introduce evidence of voluntary intoxication to prove one element, while he is unable to introduce the same type of evidence as a defense to another element. He reasons that the contested jury instruction effectively denied him the ability to use his alcohol intoxication in reference to the lesser included negligence instructions, resulting in a reduction of the State's burden of proof as to each of the elements of the offense in violation of his rights guaranteed by the Montana Constitution. The problem with McCaslin's argument is that he fails to explain why a "negligent" mens rea makes any difference in the analysis. We are unable to likewise detect any difference.

¶27 A review of the jury instructions given by the District Court reveals that the jury was instructed on: (1) the elements of each offense charged and the State's burden of proving each element beyond a reasonable doubt; (2) the definition of the mental states, purposely and knowingly; (3) that the existence of a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense; (4) the difference between direct and circumstantial evidence; (5) witness credibility; and (6) the need for a unanimous verdict. As previously stated, we review jury instructions to determine whether the instructions as a whole, fully and fairly instruct the jury on the law applicable to the case and we will not reverse the trial court unless the instruction prejudicially affects the substantial rights of the defendant. *State v. Courville*, 2002 MT 330, ¶ 33, 313 Mont. 218,

¶ 33, 61 P.3d 749, ¶ 33. We conclude that the instructions fully and fairly instructed the jury on the law applicable to the case. Accordingly, we conclude that the District Court did not abuse its discretion in instructing the jury.

## ISSUE TWO

¶28 Whether the District Court erred in admitting evidence of the Defendant's state of intoxication after his arrest?

¶29 On November 12, 2002, McCaslin filed a motion *in limine* to prohibit any and all evidence concerning events occurring upon and after his arrival at the Law and Justice Center in Bozeman, Montana, on February 2, 2002, in anticipation that the State would attempt to introduce such evidence to establish intoxication. Specifically, he objected to introduction of videotape and photos after his arrest. Before opening arguments, the court determined that such post-arrest information was admissible because it was relevant to the issues before the court and the prejudicial effect did not outweigh the probative value for the purpose of this criminal case.

¶30 McCaslin argues that the evidence presented by the State at trial regarding his post-arrest state of intoxication was not relevant, and even if it was, it was prejudicial to him. He supports this argument by alleging that the State attempted to use this evidence to show that McCaslin was too intoxicated to reasonably believe he was in danger, and to use this information for no other purpose than to prejudicially portray McCaslin as a drunk. Furthermore, McCaslin asserts that the court erred when it admitted this evidence and based upon *State v. Van Kirk*, 2001 MT 184, ¶ 37, 306 Mont. 215, ¶ 37, 32 P.3d 735, ¶ 37, the

11

error prejudiced his right to a fair trial, and therefore, this Court should reverse the verdict.

¶31 The State counters by explaining that the contested evidence tended to refute McCaslin's affirmative defense of justifiable use of force, and whether McCaslin met the requirements necessary to support his theory of self-defense was a question of fact for the jury. Moreover, the State asserts that McCaslin's conduct one-half hour after the stabbing was relevant as part of the transaction pursuant to § 26-1-103, MCA. Finally, it contends that even if this Court found that the court erred, any error was harmless, thus the evidence did not prejudice McCaslin. We agree.

¶32 This Court has stated that a trial court has broad discretion to determine whether or not evidence is relevant and admissible. *State v. Hoffman*, 2003 MT 26, ¶ 31, 314 Mont. 155, ¶ 31, 64 P.3d 1013, ¶ 31. Additionally, Rule 403 dictates that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, and we have deferred to the trial court's discretion to determine whether the probative value is outweighed by the prejudicial effect. *State v. Langford* (1994), 267 Mont. 95, 103, 882 P.2d 490, 495. The transaction rule provides that "where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA.

¶33 We said in *State v. Detonancour*, 2001 MT 213, 306 Mont. 389, 34 P.3d 487, that admissibility under the transaction rule is based upon the jury's right to hear what occurred "immediately prior and subsequent to the commission of the offense charged, so that they

may evaluate the evidence in the context in which the criminal act occurred. Acts of a defendant subsequent to the alleged commission of the crime, and intertwined therewith, are highly probative." *Detonancour*, ¶ 29 (quoting *State v. Wing*, 264 Mont. 215, 225, 870 P.2d 1368, 1374).

¶34 After considering the record, we determine that McCaslin's behavior after the police arrested him was relevant as part of the transaction. The jury had a right to hear evidence illustrating McCaslin's behavior subsequent to his arrest in order to provide context to the criminal act. Therefore, we conclude that the evidence relating to McCaslin's level of intoxication after the police arrested him was admissible as relevant evidence considering the transaction rule. The District Court did not abuse its discretion in denying McCaslin's motion *in limine* regarding admission of these exhibits.

ISSUE THREE

¶35 Whether the District Court erred in refusing to instruct the jury regarding injury to a third party bystander while acting in self-defense?

¶36 McCaslin offered two jury instructions concerning Assault with a Weapon involving Russell Tolman, who he claimed was a third party bystander. The instructions provided that a defendant is not criminally responsible for an injury to a bystander if the injury was sustained when the defendant was justified in his use of force against another person. The District Court rejected both instructions on the basis that the instructions, as a whole, adequately addressed this issue through the lesser included offense of assault as it regarded Tolman.

13

¶37 McCaslin argues that the court erred when it did not issue these two instructions because the evidence presented at trial supported the two jury instructions. For example, when Tolman joined two of the Billings men, McCaslin stated that he believed Tolman was one of the Billings men that wanted to kill him based on their threats. When he ran towards the three men, McCaslin thought he was responding against one of the alleged aggressors, not Tolman. Relying upon *State v. Popescu* (1989), 237 Mont. 493, 495, 774 P.2d 395, 396, he contends this evidence was sufficient to justify giving the offered instructions. Additionally, McCaslin maintains that his offered instructions constituted his defense theory as to Count III involving only Tolman and these instructions were supported by applicable law. Finally, McCaslin asserts that the District Court's failure to give these instructions prejudiced his substantial rights when no other instruction offered dealt with the specific factual circumstances that existed in regards to Count III, leaving him with no viable defense.

¶38 The State counters that the evidence did not support the assertion that Russell Tolman was a third party bystander as the term is commonly understood. It states that the evidence clearly illustrated that McCaslin approached Tolman and punched or stabbed him in his side. Therefore, the State maintains that the District Court did not error when it refused to issue the two instructions regarding third party bystander. We agree.

¶39 The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *Hall*, ¶ 24. After a review of the record and the jury instructions as a whole, we are unpersuaded by McCaslin's arguments and conclude that the District Court fully and fairly

14

instructed the jury on the case's applicable law. We conclude the evidence did not support the proposed instructions.

ISSUE FOUR

¶40 Whether sufficient evidence supported McCaslin's convictions of Count I, Aggravated Assault, and Count III, Assault with a Weapon?

¶41 At the close of the State's case and again at the close of all evidence, McCaslin made a motion pursuant to § 46-16-403, MCA, for acquittal as to Counts I and III. The court denied these motions. We are limited in our review of jury verdicts, therefore this Court will only consider the evidence in a criminal trial in the light most favorable to the prosecution to determine whether the trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *McMahon*, ¶ 11. If events are capable of different interpretations, the triers of fact determine which is most reasonable, since they are in the best position to observe the witnesses and determine their credibility. *State v. Martin*, 2001 MT 83, ¶ 17, 305 Mont. 123, ¶ 17, 23 P.3d 216, ¶ 17.

¶42 A defendant commits the offense of aggravated assault if he acts purposely or knowingly *and* causes serious bodily injury to another. Section 45-5-202(1), MCA. A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. Section 45-3-102, MCA. A defendant commits the offense of assault with a weapon if he acts purposely or knowingly *and* causes bodily injury to another with a weapon. Section 45-5-213(1)(a), MCA.

15

¶43 In asserting that there was insufficient evidence to support his conviction of Counts I and III, McCaslin cites to testimony to support his contention that he did not "purposely or knowingly" cause bodily harm to either Turner or Tolman. Furthermore, he cites to additional testimony to support his allegation that he was not the aggressor and the other men were, thus he was justified in self-defense.

¶44 After a review of the record, with deference to the jury and viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable trier of fact could have found the essential elements of Aggravated Assault and Assault with a Weapon beyond a reasonable doubt. Therefore, we conclude that the District Court did not err when it denied McCaslin's motions pursuant to § 46-16-403, MCA, based on insufficient evidence.

ISSUE FIVE

¶45 Whether the Defendant was entitled to credit for time served for time spent on house arrest prior to sentencing?

¶46 On June 3, 2002, the State filed a motion to revoke McCaslin's Release Order based upon his consumption of alcohol in violation of the conditions of such Order. The court modified the conditions of the Release Order on June 11, 2002, and permitted McCaslin to enter a treatment program in Minnesota and, upon release, McCaslin would be placed in Mountain Peaks Sobrietor Program in Bozeman, Montana. The program required McCaslin to wear an ankle electronic monitor whereby he had to abide by curfews and a schedule based upon his employment. He participated in this program from July 11, 2002, to February 26, 2003, a total of 230 days.

16

¶47 McCaslin contends this program entitled him to time credit for home arrest for the 230 days. He asserts that it is clear that the conditions imposed upon McCaslin were at least as stringent as set forth in the house arrest statutes, and he claims to have been a prisoner in his own home. He distinguishes his situation from that in *State v. Gulbranson*, 2003 MT 139, 316 Mont. 163, 69 P.3d 1187, based upon the fact that the conditions imposed upon him mirrored the imposition of house arrest.

¶48 As a preliminary matter, the State asserts that McCaslin raises this issue for the first time on appeal, and therefore it is barred. Even if this Court were to consider McCaslin's issue, the State cites to § 46-18-201(4)(k), MCA, and contends that McCaslin is not entitled to credit for the Sobrietor Program because it is clear from the statutory scheme that credit for "home arrest" is only available when it is imposed and served after a defendant has been convicted. Additionally, since he has been convicted of aggravated assault, he is not eligible for home arrest. *See* §§ 46-18-1001(5) and -1004, MCA. We agree with the State.

¶49 The rule is well established that this Court will not address an issue raised for the first time on appeal. *State v. Peterson*, 2002 MT 65, ¶ 24, 309 Mont. 199, ¶ 24, 44 P.3d 499, ¶ 24 (citing *State v. Weaselboy*, 1999 MT 274, ¶ 16, 296 Mont. 503, ¶ 16, 989 P.2d 836, ¶ 16). A party may not raise new arguments or change its legal theory on appeal, because it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider. *State v. Martinez*, 2003 MT 65, ¶ 17, 314 Mont. 434, ¶ 17, 67 P.3d 207, ¶ 17. The District Court record does not reflect McCaslin's claim, therefore we must limit our review only to issues raised before the District Court and we will not address

an issue that has not been properly preserved for our consideration.

¶50    We affirm McCaslin's conviction.


                                        /S/ JIM REGNIER


We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson dissents and concurs.

¶51    I dissent from our decision as to Issue One for the same reasons set out in my special concurrence in *State v. Egelhoff* (1995), 272 Mont. 114, 127, 900 P.2d 260, 267 (Nelson, J., concurring) (*cert. granted by Montana v. Egelhoff*, 516 U.S. 1021, 116 S.Ct. 593, 133 L.Ed.2d 514 (1995)).  I concur in the balance of our Opinion.


                                          /S/ JAMES C. NELSON

Justice Patricia Cotter dissents and concurs.

¶52    Although I was not on the Court at the time that *State v. Egelhoff* was decided, I agree with Justice Nelson's special concurrence therein and therefore join in his Dissent and Concurrence in this case.  In addition, I would conclude that where a jury instruction is premised upon a statute, as Jury Instruction No. 17(a) ostensibly was here, then the instruction should mirror the statutory language *and* punctuation in all significant respects. I find it troubling here that, in its proposed Instruction 17(a) which was given by the Court, the State inserted a period after the first clause lifted from § 45-2-203, MCA, thereby giving the first clause of the statute the tone of an absolute mandate.  The first sentence of the instruction appears to compel the conviction of any person who is in an intoxicated condition.  This is a different message than is conveyed via the punctuation contained in the statute, and is certainly not the law.

¶53    I concur in the balance of our Opinion.


                                                        /S/ PATRICIA O. COTTER


20