No. 04-035

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 8N

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

LONNIE LEE DAHL,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Sixteenth Judicial District,
In and For the County of Garfield, Cause No. DC 2002-293,
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        J. B. Wheatcroft, Attorney at Law, Miles City, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Kathy Seeley and
Barbara C. Harris, Assistant Attorneys General and Special
Deputy County Attorneys, Helena, Montana

Submitted on Briefs:  December 22, 2004

Decided:   January 25, 2005

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2      A jury found Lonnie Lee Dahl guilty of the crime of theft by deception. He appeals from the District Court's denial of his motion for a directed verdict and from the court's refusal to accept certain of his proposed jury instructions. We affirm.

¶3      We address the following issues on appeal:

¶4      1. Whether the District Court erred in denying Dahl's motion for a partial directed verdict based on Dahl's contention that the victim's accountants characterized some of the allegedly stolen funds as a "loan."

¶5      2. Whether the District Court abused its discretion in refusing Dahl's proposed jury instructions seven and eight, which related to a power of attorney.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6      Erma Rosilia "Rosie" Pense was born in 1911 and up until 1998 had lived her entire life on her family's homestead ranch in Garfield County. Pense is an only child and never had children. Testimony at trial in the instant case revealed that Pense had little experience in financial matters and little concept of the value of money.

2

¶7    Pense's health deteriorated in the 1990s and she developed dementia. It is unclear how bad her dementia was in 1998, but by early 2001 it had progressed to the point that she could not remember simple facts such as the month or date. By 2003 she could not remember fundamental facts about herself, such as her parents' names or that she had been married.

¶8    In 1997 Pense's husband hired Lonnie Dahl as a ranch hand. Dahl earned around $1,000 a month. In working on the ranch, Dahl got to know Pense. In May of 1998 Pense became convinced that her husband had been involved in an attack on her and her mother in the early 1970s. The attack involved unknown gunmen firing upon her family's home. The gunmen were never identified or apprehended. Based upon her belief that her own husband had been one of these gunmen, Pense asked Dahl to take her away from him. Dahl did so, transporting her to some neighbors. Dahl's employment at the ranch ceased that day. It is undisputed that he was not owed any back-pay.

¶9    From April 1999 to February 2000 Pense wrote six checks to Dahl, paid out of her own funds. The amounts of the checks, and their dates, were $20 (4/8/1999), $15,000 (4/12/1999), $5,000 (5/19/1999), $5,000 (12/10/1999), $4,000 (1/3/2000), and $29,000 (2/21/2000). On five of the checks Pense wrote "wages" on the memo line, and on another similarly wrote "services rendered." At trial Dahl claimed that these checks just "arrived" in the mail, unrequested by him, and were sent because Pense knew Dahl was struggling financially. Also at trial, however, was evidence that Pense had said on different occasions, and before her dementia had grown to an advanced stage, that Dahl had told her that her

3

husband had not paid him all of the wages he had been due, and that she therefore paid Dahl for these "wages."

¶10    Dahl was charged with theft by deception and tried and convicted in Garfield County. He now appeals.

## STANDARD OF REVIEW

¶11    We review the denial of a motion for a directed verdict to determine whether the district court abused its discretion. *State v. Giant*, 2001 MT 245, ¶ 9, 307 Mont. 74, ¶ 9, 37 P.3d 49, ¶ 9. "No abuse of discretion occurs if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Giant*, ¶ 9. We review jury instructions in a criminal case to determine whether they "as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. McCaslin*, 2004 MT 212, ¶ 14, 322 Mont. 350, ¶ 14, 96 P.3d 722, ¶ 14. The district court has "broad discretion" in how it instructs the jury. *McCaslin*, ¶ 14.

## DISCUSSION

### ISSUE ONE

¶12    *Whether the District Court erred in denying Dahl's motion for a partial directed verdict based on Dahl's contention that the victim's accountants characterized some of the allegedly stolen funds as a "loan."*

¶13    Section 45-6-301(2), MCA (1999), states, "A person commits the offense of theft when the person purposely or knowingly obtains by threat or deception control over property

4

of the owner and: (a) has the purpose of depriving the owner of the property . . . ." Dahl's motion for a directed verdict focused on the fact that Pense's accountants later categorized the funds he obtained from Pense as a "loan." It makes no difference, however, how the funds were later characterized, whether for tax purposes or any other reason. What matters in considering whether a defendant committed theft by deception is whether he used deception *at the time he obtained the property. See State v. Martinez* (1980), 188 Mont. 271, 282, 613 P.2d 974, 980 ("[A] victim cannot ratify a criminal act after the crime has been completed.").

¶14 There is ample evidence in this case for a rational trier of fact to find beyond a reasonable doubt that Dahl used deception. He received thousands of dollars via checks from Pense who wrote "wages" on those checks. Pense later stated, on more than one occasion, that Dahl had told her that her estranged husband owed him back wages. However, it is undisputed that her estranged husband did not, in fact, owe Dahl back wages. Therefore, a rational fact finder could conclude beyond a reasonable doubt that Dahl obtained thousands of dollars from Pense by means of deception. The fact that Pense's accountants subsequently treated the transactions as "loans" has nothing to do with whether Dahl deceived her.

## ISSUE TWO

¶15 *Whether the District Court abused its discretion in refusing Dahl's proposed jury instructions seven and eight, which related to a power of attorney.*

¶16 In proposing instructions seven and eight Dahl wanted the jury advised as to what it means to grant a "durable power of attorney." Since Pense had granted a power of attorney

to one of her accountants, and since that accountant then characterized some of the funds Pense had earlier transferred to Dahl as a "loan," Dahl wanted the jury to impute this characterization to Pense herself. Since these jury instructions were in furtherance of the theory discredited in our discussion of Issue One, *supra*, we conclude that the District Court was within its discretion in refusing them.

## CONCLUSION

¶17 The judgment of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE